**WEST POINT–PEPPERELL, INC., Plaintiff,**

v.

**F. Ray MARSHALL, Secretary of Labor et al., Defendants.**

**Civ. A. No. C80–160R.**

United States District Court,
N. D. Georgia,
Rome Division.

Aug. 28, 1980.

Lovic A. Brooks, Edward Katze, Charles A. Edwards and William K. Principe, Atlanta, Ga., for plaintiff.

Lawrence E. Gill, Assistant United States Attorney, Ken S. Welsch, Michael K. Hagan, U.S. Dept. of Labor, Office of the Solicitor, Region IV, Atlanta, Ga., for defendants.

## ORDER OF COURT

HORACE T. WARD, District Judge.

Plaintiff, a textile manufacturer, seeks an injunction restraining execution of an administrative search warrant which authorizes the Occupational Safety and Health Administration to conduct an inspection at plaintiff's Lindale, Georgia mill. The warrant was issued by a United States Magistrate on July 28, 1980 on OSHA's ex parte application. On the following day Administration compliance officers attempted to execute the warrant at the Lindale mill and plaintiff's counsel brought this action for injunctive relief under Fed.R.Civ.P. 65. A hearing was held that day, and OSHA voluntarily agreed through its counsel to refrain from executing the warrant until the court ruled on the temporary restraining order. A temporary restraining order was issued on August 4th and later extended so that the court could determine if the preliminary injunction which plaintiff sought. should be granted. Following an adversary hearing the court has determined that it should.

This case presents, inter alia, the novel question of whether probable cause for the issuance of an administrative search warrant to the Occupational Safety and Health Administration exists when an employee complaint to the Administration is not directed against the employer but against its compliance with OSHA regulations. Pursuant to the cotton dust safety standards con-

tained in 29 C.F.R. § 1910.1043, West Point–Pepperell requires workers in its Lindale mill whose jobs subject them to a high level of dust pollution to wear government–approved respirator masks. At the time compliance with the respirator standard began, the mill employees required to wear masks objected to them with complaints to supervisors and letters to OSHA and various legislators, despite prior educational efforts on the employer's part which included showing a film on the subject and publishing frequent articles in the mill newsletter. These complaints and interviews with mill employees are the primary justifications which OSHA offers to support the warrant.

West Point–Pepperell and OSHA have previously scuffled over the issue of cotton dust pollution in the Lindale mill. Inspections were made at the facility in 1977 and a citation issued for violations of 29 C.F.R. §§ 1910.134(a)(1) & 1910.1000(a)(2), the cotton dust standards. An interlocutory appeal from administrative litigation involving this citation is still pending before the Occupational Safety and Health Review Commission (OSHRC), and the pendency of this appeal provides a sharp edge to plaintiff's attack on the instant warrant. West Point–Pepperell argues that execution would constitute the sort of followup inspection barred by OSHA's field operations manual, which provides at Chapter V(f):

> When a citation is currently under contest, no followup inspection should be scheduled regarding the contested items unless the original citation was for a serious violation which bordered on an imminent danger situation . . . .

A judge of this district has held that OSHA may not reinspect when a prior citation based on the same conditions is on appeal to the OSHRC. *Marshall v. West Point–Pepperell, Inc.*, Civil Action No. 77–32R (N.D.Ga., April 8, 1977) (unpublished opinion). Then–District Judge Henderson's order recited the Secretary's concession in that case that there existed "no imminently dangerous conditions at the Lindale mill justifying emergency enforcement procedures." *Id.* at 8.

The foregoing operating rule and decision are offered by plaintiff as grounds to bar any followup OSHA inspections. The Secretary, however, takes the position that the inspection he seeks is nothing of the kind and that independent probable cause exists for this administrative warrant. This allegedly arises either from the need to implement new cotton dust standards [1] or from employee complaints about the respirator requirements.

At the kernel of the issue which this action presents to the court is thus whether there was sufficient probable cause, independent of the prior cotton dust citation, to support the magistrate's issuance of a warrant. Appended to this central question are various other points of controversy raised by the plaintiff.

### Administrative Probable Cause

 Nonconsensual administrative inspections of non–public areas of business not historically subject to heavy governmental regulation must be conducted pursuant to warrants issued by neutral judicial officers on a showing of adequate probable cause. *See v. Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). This warrant requirement encompasses OSHA searches. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). The quantum of probable cause necessary for issuance of an administrative warrant has not been defined with precision by the Supreme Court. "[T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." *Camara v. Municipal Court*, 387 U.S. 523, 536, 87

---

1. 29 C.F.R. § 1910.1043(e)(2): "Whenever feasible engineering and work practice controls are not sufficient to reduce employee exposure to or below the permissible exposure limit, the employer shall nonetheless institute these controls to immediately reduce exposure to the lowest feasible level, and shall supplement these controls with the use of respirators which shall comply with the provisions of paragraph (f) of this section." Paragraph (f) of the regulation lists details of implementation.

S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967). This is a standard which is necessarily applied case–by–case "under the general Fourth Amendment standard of reasonableness," *See*, 387 U.S. at 546, 87 S.Ct. at 1741. Nevertheless, it is clear that courts may authorize administrative inspections on facts which would not support the issuance of a search warrant in a criminal case.

Probable cause in the criminal law sense is not required. For the purposes of an administrative search such as this [OSHA inspection], probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court*, 387 U.S., at 538, 87 S.Ct. at 1736.

*Barlow's*, 436 U.S. at 320–21, 98 S.Ct. at 1824–25. There are thus two bases for establishing probable cause for an OSHA inspection, either of which will, if present, cause the instant warrant to be upheld and the preliminary injunction to be denied.

The application for warrant was made to United States Magistrate John E. Dougherty on July 28, 1980, by OSHA Atlanta Area Director Joseph Camp. He was accompanied by Michael Hagan, an attorney for the Department of Labor. Attached to the application were a sworn statement by Mr. Camp, an employee complaint representative of a number of similar letters received by the Administration from Lindale mill workers, and an employee petition. Employees' names were deleted by the Secretary. Seven specific violations of the respirator standards were claimed to be occurring at the mill, including that West Point–Pepperell had not taken steps to ensure proper respirator fit, had failed to evaluate individual employees' ability to wear respirators, had failed to adequately make medical investigations concerning employees' complaints about respirators, had failed to transfer workers unable to wear respirators to low dust areas without reducing their pay, had failed to inform its workers about such hazards of cotton dust exposure as byssinosis (a respiratory illness colloquially known as "brown lung" by textile workers), had failed to inform employees of pulmonary test results and other medical data, and had possibly failed to require certain employees to wear the type of mask required for the cotton dust levels they were exposed to. After reciting the above allegations, the application sought authorization "to determine the particular levels of cotton dust exposure" by taking air samples at the mill with vertical elutriators, devices built to measure aerial dust concentration. The application also sought authority to take photographs and to conduct private interviews with employees, and requested that the warrant extend to include any area where work is performed. It also sought access to various records maintained by the employer.

■ One basis for probable cause is a proper showing by the Administration that the proposed inspection of the Lindale mill is part of an OSHA enforcement program.[2] This requirement of generality means that the plan of which the inspection is a part

2. This variety of probable cause was first described by Mr. Justice Douglas in his dissenting opinion in *Frank v. Maryland*, 359 U.S. 360, 383, 79 S.Ct. 804, 817, 3 L.Ed.2d 877 (1959):

This is not to suggest that a health official need show the same kind of proof to a magistrate to obtain a warrant as one must who would search for the fruits and instrumentalities of crime. Where considerations of health and safety are involved, the facts that would justify an inference of "probable cause" to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken. Experience may show the need for periodic inspections of certain facilities without a further showing of cause to believe that substandard conditions dangerous to the public are being maintained. The passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of a warrant. The test of "probable cause" required by the Fourth Amendment can take into account the nature of the search that is being sought. The *Camara* majority quoted this language with approval, 387 U.S. at 538, 87 S.Ct. at 1735.

must be, if not an industry–wide one, at least one encompassing a broader scope than the single target establishment.[3] It is a condition imposed by the Court to prevent arbitrary action against one business enterprise. *W. LaFave, Search and Seizure* § 10.2, p. 224 (1978). As with the "specific violation" basis for administrative probable cause, *infra,* the court must balance the need for the inspection and the public interest at stake against the anticipated degree of intrusion.

In the instant case the Administration has not argued with any force that the warrant to inspect the Lindale plant is pursuant to a general administrative plan. While it is true that new cotton dust standards have been adopted by OSHA, its counsel informed the court at the most recent hearing that no textile mills have yet been inspected pursuant to the new regulations. Moreover, the defendants' initial brief in this action only described the inspection as "complaint–based," and asserted that probable cause was present because worker complaints and interviews with employees indicated a probability of noncompliance with its respirator standards. No claim that the intended search was pursuant to an impartial regulatory scheme was made. Most important, Director Camp's initial application to the magistrate stated only that the inspection was based on complaints and interviews,[4] which had led OSHA personnel to believe that specific violations were occurring at the Lindale mill. The court has reviewed the application and attachments and concludes that the instant search was not sought as part of a neutral general enforcement program concerning the dust or respirator standards. Accordingly, that variety of administrative probable cause cannot support the instant warrant.

Probable cause to issue an administrative search warrant to OSHA can also be founded on an indication that specific violations are taking place in a particular facility. *Barlow's,* 436 U.S. at 320, 98 S.Ct. at 1824. As with probable cause based on an impartial plan, the standard which must be met to support the issuance of a warrant on this basis is less than that required in criminal cases. *Id.* Nevertheless, it is incumbent upon the judicial officer who must rule on the application to determine whether there is at least a reasonable prospect, supported by some reliable information, that the violations asserted in the application for warrant are occurring on the commercial premises in question.

Frequently, warrants to inspect for specific violations are sought on the basis of employee complaints. Section 8(f) of the Occupational Safety and Health Act, 29 U.S.C. § 657(f), specifically provides for such inspections. In cases reported to date these complaints have invariably been directed, as Congress doubtless expected, against conditions maintained by employers. *See, e. g., Marshall v. North American Car Co.,* 628 F.2d 320 (3d Cir., July 24, 1980) (slip op.); *Stephenson Enterprises, Inc. v. Marshall,* 578 F.2d 1021 (5th Cir. 1978). As mentioned *supra,* the case at bar presents a somewhat different situation. Study of the documents submitted by counsel, the hearing held on August 19 and 22, and particularly answers given by Mr. Camp on cross–examination has convinced the court that there did not exist at the time the warrant application was made, and there does not exist now, probable cause to believe that the violations asserted are occurring. The evidence revealed that West Point–Pepperell has instituted a comprehensive respirator program, including a medical program

3. The corresponding showing in a *Camara* –type housing inspection is that the proposed entry is part of an administrative plan providing for the inspection of an entire area. *Camara,* 387 U.S. at 538, 87 S.Ct. at 1735.

4. The application also stated: "Each of the previous inspections [two in 1974 and two in 1977] was conducted during the time when the former cotton dust standard was in effect. Any citation which might be issued based on the inspection presently sought to be conducted would be based on the respirator standard and/or the present cotton dust standard . . or 5A1 of the Act." However, this was apparently a reference to the scope of the intended inspection rather than a justification for it.

to evaluate employees' ability to wear respirators and to handle physical and psychological complaints stemming from the required wearing of respirators.[5] It was also apparent that the Lindale mill does not discriminate against employees who are unable to wear respirators and that it has tried to thoroughly educate its workers on the dangers of cotton dust. The employees' petition to the government indicated at least some familiarity with the disease of byssinosis. As to the alleged failure to provide workers with medical test results, this is not a requirement under OSHA or its implementing regulations. The final violation alleged in the application was that although the mill has required all employees affected by the regulations to wear masks it has not always required masks commensurate with exposure levels as provided for in the regulations.[6] However, OSHA has officially announced its intention not to enforce the respirator regulations until initial monitoring by employers of cotton dust levels has been completed, thus postponing the effective date provided for in 29 C.F.R. § 1910.1043(f)(2)(vi) until monitoring by a company has been completed or until September 27, 1980, whichever occurs first. 45 Fed.Reg. 12416–17 (February 26, 1980) (to

be codified in 29 C.F.R. § 1910.1043). Considerable evidence has been presented to the court that West Point–Pepperell is carrying out a plan for monitoring cotton dust levels in its Lindale mill with vertical elutriators, the same testing devices which OSHA seeks to use. The scheme is being conducted in conjunction with changes to plant layout which are expected to alter dust levels in various areas of the mill. This monitoring extends the effective date by which the mill must fully comply with the respirator standards until September 27, 1980 or the completion of monitoring. Accordingly, the last allegation of a specific violation made to the magistrate did not give rise to administrative probable cause; even assuming the existence of uncontrovertible evidence that employees were not being required to wear the proper respirators, West Point–Pepperell could not have been in violation of standards not yet in effect.

The application and other available evidence do not give rise to administrative probable cause to believe that effective OSHA respirator standards were or are being violated. The warrant was thus issued on an insufficient showing[7] unless the em-

---

5. The court has also familiarized itself with an employee interview submitted for its *in camera* review which was before the magistrate. It does not indicate that violations of OSHA respirator standards are occurring at the Lindale mill. While the statement declares that workers are only given examinations by the mill's medical personnel when they present symptoms or problems to supervisors, this does not substantiate a finding of probable cause to believe the respirator standards are being violated. 29 C.F.R. § 1910.1043(h)(3) requires medical examination of employees exposed to cotton dust at annual or six–month intervals. Since this requirement only becomes effective on March 27, 1981, *see* 45 Fed.Reg. 12417 (1980), it would be somewhat precipitous to issue a warrant to inspect its enforcement at this time. The document will be sealed and made a part of this record for appellate purposes.

6. 29 C.F.R. § 1910.1043(f)(2), Table 1, sets requirements for types of respirators–single use, quarter mask, supplied–air respirators, etc.–to be worn at various levels of cotton dust concentration. *See also* 30 C.F.R. Part 11, which lists various respirator types approved by the

National Institute of Occupational Safety and Health.

7. While it has been persuasively contended that the lesser level of probable cause for issuance of an administrative search warrant authorized by *Camara* should not be sufficient for the issuance of such warrants upon a citizen (or, in OSHA cases, an employee) complaint, *see* Note, 77 *Yale L.J.* 521, 641 (1968), that is not this court's reading of the applicable case law. The balancing of the public's interest in regulatory enforcement against the employer's rights must still be made when a complaint–based warrant is sought, and consideration of the statutory objectives of a regulatory measure may often outweigh the potential infringement of privacy rights. LaFave, too, has pointed out that complaints play a greater part in business inspections than in housing inspections and finds the argument less convincing in the commercial context. *W. LaFave, Search and Seizure* § 10.2(d) (1978). *Accord, United States v. Consolidation Coal Co.*, 560 F.2d 214 (6th Cir. 1977) (holding that a warrant was properly issued upon complaint by a former employee: "To deny warrant applications solely because

ployee complaints about the practicality of OSHA's own respirator requirements can support its execution. Numerous letters of complaint and employee petitions signed by several hundred workers at the Lindale mill objected to the respirator requirements because wearing masks allegedly caused employees headaches, nausea, and disorientation. These complaints were sent to various legislators and President Carter and were forwarded to OSHA. As stated, the objections raised by the employees went to the mask requirements themselves; there were no allegations that West Point–Pepperell was in noncompliance with them.

 The question is thus presented whether complaints directed against OSHA regulations will warrant an inspection of commercial premises where the complainants work. The employer's Fourth Amendment right to be free from unreasonable searches must be offset against the weight to be accorded OSHA's need to determine if the regulations it has issued to the industry are too oppressive. "[R]easonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." *Camara*, 387 U.S. at 539, 87 S.Ct. at 1736. The Administration's need to determine if its regulations are more restrictive than they need to be appears less weighty to the court than the more commonly–invoked purpose of inspecting for dangerous working conditions. When the establishment's Bill of Rights guarantees are accorded the deference they deserve by applying the balancing test required by the Supreme Court, the Administration's need is overbalanced. "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable

official entries upon his private commercial property." *See*, 387 U.S. at 543, 87 S.Ct. at 1739. The complaints about OSHA's respirator requirements, which West Point–Pepperell was complying with, are insufficient to create probable cause for inspection of West Point–Pepperell's mill.

Thus, since none of the bases for administrative probable cause were present in the instant case, the warrant was improperly issued.[8]

### The Remaining Issues

Other issues presented in the case at bar must still be resolved. These are whether attorneys from the Department of Labor are authorized to seek OSHA warrants, the propriety of ex parte warrant applications by the Administration, the appropriate breadth of a warrant to inspect the Lindale mill, and the explanation of specific reasons why a preliminary injunction should issue that is required by Fed.R.Civ.P. 65(d). It may be contended that the court should refrain from addressing the first three points, that its ruling that the instant warrant was improperly issued renders them moot. This is not so. OSHA still intends to inspect the mill and will seek to show probable cause to a magistrate that such an inspection is justified as soon as it is able to do so. The same questions will inevitably arise in a future, similar controversy between the Administration and West Point–Pepperell and should be resolved now. *Cf. Cerro Metal Products v. Marshall*, 620 F.2d 964, 968–69 (3d Cir. 1980).

### Applications by Labor Department Attorneys

 It is plaintiff's position that the instant warrant is invalid, even if probable

---

criminal probable cause is lacking would frustrate compliance review and defeat attainment of the policy objectives of the Act."). Nevertheless, even the lesser quantum of probable cause required for administrative inspections pursuant to employee complaints has not been met in the case *sub judice*.

**8.** This ruling makes it unnecessary for the court to determine if the inspection which

OSHA seeks would be a prohibited followup inspection, see page 2, *supra*, but any magistrate to whom OSHA may in the future present an application for a warrant to inspect the Lindale mill should evaluate this possibility in light of *Marshall v. West Point–Pepperell, supra*, Civil Action No. 77–32R (N.D.Ga., April 8, 1977).

cause were present for its issuance, because the application to the magistrate was made by the Area Director and a Labor Department attorney. This contention is founded on Fed.R.Crim.P. 41(a)[9] and 54(c)[10] and a conclusion that Labor Department lawyers do not come within the definition of attorneys who may seek search warrants. Even though criminal sanctions may sometimes result from an Administration inspection, however, the Federal Rules of Criminal Procedure are not the source of authority for OSHA warrants. Warrants for Occupational Safety and Health Act inspections have been directly authorized by the United States Supreme Court. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 325, 98 S.Ct. 1816, 1827, 56 L.Ed.2d 305 (1978). This authorization is as valid as that done by means of the Court's rule–making power. Also, the judges of this district have ordered that magistrates may "issue search warrants to agents of the Occupational Safety and Health Administration of the United States Department of Labor." *See* Order, November 11, 1978. The full court's action provides an adequate ground for issuance of administrative warrants independent of the criminal rules and specifically allows OSHA attorneys to seek them. Plaintiff's contention is not meritorious.

### Ex Parte Inspection Warrants

■ Plaintiff relies on a Third Circuit Court of Appeals decision to support its claim that OSHA may not seek administrative search warrants without a prior adversary hearing because it has not made the appropriate rule changes after a notice and comment period. *Cerro Metal Products v. Marshall*, 620 F.2d 964 (3d Cir. 1980). *See Marshall v. Huffhines Steel Co.*, 478 F.Supp. 986 (N.D.Tex.1979). The Court of Appeals' opinion is cogent but the court declines to adopt the obstructive construction of 5 U.S.C. § 553 urged by West Point–Pepperell and adopts instead the reasoning

followed by the Tenth Circuit in *Marshall v. W & W Steel Co.*, 604 F.2d 1322, 1325–26 (10th Cir. 1979). 29 C.F.R. § 1903.4(d) now provides:

> For purposes of this section, the term compulsory process shall mean the institution of any appropriate action, including ex parte application for an inspection warrant or its equivalent.

This is simply an interpretative rule clarifying the definition of "compulsory process" contained in § 1903.4 and 5 U.S.C. § 553 does not mandate notice and comment procedures in making such clarifying changes. Ex parte applications for administrative inspection warrants are therefore proper despite this lack. *See in re Worksite Inspection of S. D. Warren, Division of Scott Paper*, 481 F.Supp. 491, 492–94 (D.Me.1979); *In re Sauget Industrial Research and Waste Treatment Association*, 477 F.Supp. 88, 90 (S.D.Ill.1979). Any reapplication by OSHA for warrant to inspect the Lindale mill may be made ex parte.

### Scope of the Warrant

■ Overbreadth in an administrative warrant justifies the intervention of a district court to prevent Fourth Amendment violations. When inspection is sought under § 8(a) of the Act, 29 U.S.C. § 657(a), under a general administrative plan, the entry is wall–to–wall and may embrace "all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein" and "[any] area, workplace or environment where work is preformed by an employee of an employer." When it is pursuant to an employee complaint and § 8(f), 29 U.S.C. § 657(f), however, "the scope of the inspection must bear an appropriate relationship to the violations alleged in the complaint." *Marshall v. North American Car Co.*, 626 F.2d 320, 323 (3d Cir., July 24, 1980) (slip op.). The warrant issued by the magistrate in the present case

---

**9.** "A search warrant authorized by this rule may be issued . . . upon request of a federal law enforcement officer or an attorney for the government."

**10.** " 'Attorney for the government' means the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney . . . .."

authorized vertical elutriator testing in two areas of the mill in which respirators are not worn, the slashing and weaving rooms. It did not grant the Secretary authority to conduct a wall–to–wall inspection but was nevertheless broader than reasonable when the complaints went only to respirator standards. Dust concentrations in other areas of the plant are not relevant to the purpose of the intended entry. Additionally, some of the medical records sought by the Secretary were not yet required and thus could only be reached under a general administrative plan search which, as noted *supra*, this was not. Because of their expertise, it is incumbent upon agents of the Secretary carefully to limit the scope of warrants based on complaints when presenting them to magistrates; in the ex parte context of the application it is difficult to dissect the various requests contained in a proposed warrant. Any warrants applied for in the future should incorporate these considerations.

### Preliminary Injunction

Fed.R.Civ.P. 65(d) requires that a court issuing a preliminary injunction set out the reasons for doing so with specificity, describing in reasonable detail the acts to be restrained by its order. The primary reason for granting the injunction in the case at bar is plaintiff's showing that probable cause for the administrative warrant is lacking, and it is execution of that warrant which is enjoined. The Fifth Circuit Court of Appeals requires that preliminary injunctions be granted only upon a showing of

(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) [a showing] that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) [a showing] that granting the preliminary injunction will not disserve the public interest.

*Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). Numbers (1), (3), and (4) have expressly been determined in plaintiff's favor in performing the balancing test for probable cause of *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). As to irreparable harm, the possibility of an administrative entry in violation of the Fourth Amendment is, alone, potential harm enough to justify granting an injunction. *Maney v. Ratcliff*, 399 F.Supp. 760 (E.D.Wis.1975); *Illinois Migrant Council v. Pilliod*, 398 F.Supp. 882 (N.D.Ill.1975). Even if the specter of an unreasonable search is not serious and noncompensable enough to warrant injunction. see *227 Book Center, Inc. v. Codd*, 381 F.Supp. 1111 (S.D.N.Y.1974), there is still ample evidence in the present case to justify this court's exercise of its Rule 65 powers. The installation of OSHA's vertical elutriators, which rest on stands and must necessarily cause some blockage of the narrow aisles between machines in the Lindale plant, would burden employer and employees considerably more than the devices already utilized by West Point–Pepperell, which are wall–mounted and out of the way of employee traffic. Furthermore, mill employees–who are paid on a piecework basis–would be removed from their tasks during work hours, with concomitant monetary losses to them and to the mill. These burdens would not be enough to prevent the issuance of a warrant were probable cause present, but in the absence of such justification for the invasion it is sufficient to warrant an injunction.

For the above and foregoing reasons, it is hereby ORDERED that a preliminary injunction issue to prevent the execution of the warrant issued to the Area Director of the Occupational Safety and Health Administration by Magistrate Dougherty on July 28, 1980, for an administrative inspection of West Point–Pepperell's Lindale, Georgia textile mill. It is further ORDERED that the said warrant is QUASHED. No costs.