Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Petitioner,

v.

BURLINGTON NORTHERN INCORPORATED, Respondent.

No. MCV-80-55-BLG.

United States District Court, D. Montana, Billings Division.

April 20, 1981.

Ann D. Nachbar, U. S. Dept. of Labor, Washington, D. C., for petitioner.

Charles C. Dearden, Billings, Mont., for respondent.

AMENDED MEMORANDUM OPINION

BATTIN, Chief Judge.

Petitioner has moved the Court for an order adjudicating respondent in civil contempt for refusing to permit officials of the Occupational Safety and Health Administration to inspect respondent's maintenance and repair facility located at Laurel, Montana, pursuant to an inspection warrant authorized and issued by U. S. Magistrate G. Todd Baugh. The warrant was issued under the Occupational Safety and Health Act of 1970 (hereinafter referred to as the

Act), 29 U.S.C. §§ 651 *et seq.* Respondent has moved to quash the inspection warrant on grounds that the scope of inspection is overbroad and in effect a "wall-to-wall" warrant. Oral argument regarding the motions was conducted by the Court on December 30, 1980, and additional supporting documents were filed by respondent on January 27, 1981, and April 1, 1981.

The sole issue for the Court's determination is the validity of the scope of an administrative inspection warrant secured by petitioner under the Act, 29 U.S.C. §§ 657(a) and (f).

## FACTUAL BACKGROUND

On June 24, 1980, an employee of respondent Burlington Northern (hereinafter referred to as B.N.) filed a complaint with the Occupational Safety and Health Administration (hereinafter referred to as OSHA) concerning railroad car welding conditions existing at respondent's maintenance and repair facility which he believed to be in violation of the Act. The employee primarily alleged that regular employee exposure to toxic lead fumes was occurring despite precautions allegedly instituted by B.N. Petitioner alleges that appropriate respirators suitable for lead fume filtering were not used at B.N.'s Laurel facility. On December 3, 1980, subsequent to the employee complaint, petitioner secured an inspection warrant from the Magistrate which provided permission for entry upon the workplace described as

"B.N., Inc.

Railroad Maintenance and Repair Facility, Laurel, Montana."

Execution of and inspection pursuant to the warrant was attempted on the same day by OSHA officials who were refused entry by B.N. Petitioner then moved this Court for an order holding B.N. in contempt and allowing the search, and B.N. then moved to quash the warrant.

## SCOPE OF THE WARRANT

■ The warrant provides authority "to inspect and investigate . . . the aforesaid establishment and any pertinent area, workplace, or work environment therein where work is performed by employees of Burlington Northern, Incorporated; to inspect all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein; and to inspect and copy records required to be kept by the Act and regulations issued thereunder, and any other records and documents which are directly related to the purpose of the inspection and investigation."

The applicable statute, 29 U.S.C. §§ 657(a) and (f), provides for two types of administrative inspections. § 657(a) inspections are usually commenced pursuant to a general administrative plan designed to implement the objectives of compliance with the Act. Such an inspection is commonly referred to as a "wall-to-wall" inspection since an entire workplace may be searched under this section.[1] § 657(f)(1) authorizes special inspections initiated by employee complaints concerning suspected violations of the Act.[2]

---

1. 29 U.S.C. § 657(a) provides:

    (a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

    (1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

    (2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials

therein, and to question privately any such employer, owner, operator, agent or employee.

2. 29 U.S.C. § 657(f)(1) provides:

    Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that,

The Secretary of Labor then orders an inspection when he determines reasonable grounds exist to suspect a violation of an agency regulation. An employer who is requested to permit an inspection of its workplace can refuse, therefore requiring the Secretary to obtain an inspection warrant. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

The Secretary contends that the broad remedial purposes of the Act are sufficient to enable the execution of the inspection in accordance with the language set forth in the warrant. In *Burkart Randall Div. of Textron, Inc. v. Marshall*, 625 F.2d 1313 (7th Cir. 1980), the Court concluded that once probable cause is established through an employee complaint, OSHA is empowered to inspect the entire premises of an employer. Several other authorities have reached similar results. *See, e.g., Dravco Corp. v. Marshall*, 5 OSHC 2057, 2060, aff'd 578 F.2d 1373 (3rd Cir. 1978); *In the Matter of: Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 5 OSHC 1375, 1376 (N.D.Ill. 1977); *In the Matter of: Establishment Inspection of Chicago Magnet Wire Corp.*, 5 OSHC 2024, 2025 (N.D.Ill.1977). These authorities contend limiting the scope of an inspection to the areas enumerated within an employee complaint negates the basic purposes and functions of the Act since employers will allegedly attempt to correct or "sanitize" workplaces open to OSHA inspectors while concealing violations of the Act present in other areas of the facility. It is further suggested that requiring nonconsensual inspections to be conducted by warrant would prevent any "fishing expeditions" by OSHA officials in a wall-to-wall or general inspection. *Burkart Randall Div. of Textron, Inc. v. Marshall, supra*, 625 F.2d at 1324. The Court cannot agree with

this rationale. A balance must be struck between the need for intrusion and the threat of disruption to the occupant. *Marshall v. Central Mine Equipment Co.*, 608 F.2d 719, 720 n. 1 (8th Cir. 1979), citing *Michigan v. Tyler*, 436 U.S. 499, 507, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978). A more scrutinized examination of nonroutine investigatory searches may be necessary when such are made under specific criteria, i.e., employee complaints. *See Michigan v. Tyler, supra*, 436 U.S. at 507–508, 98 S.Ct. at 1948–1949 (1978). Contentions similar to those expressed by the Secretary have been discussed by recent decisions in other circuits. In *West Point-Pepperell, Inc. v. Marshall*, 496 F.Supp. 1178 (N.D.Ga.1980), the overbreadth concerning an OSHA inspection warrant was discussed. The Court determined that when an inspection is sought pursuant to an employee complaint (§ 657(f)), the scope of such inspection must bear an appropriate relationship to violations alleged in the complaint. *West Point-Pepperell, Inc. v. Marshall, supra*, 496 F.Supp. at 1186, citing *Marshall v. North American Car Co.*, 626 F.2d 320, 323 (3rd Cir. 1980). In dicta, the Court also found an incumbent duty by the secretary to limit the scope of inspection warrants based on complaints when applying for warrants before a magistrate. *West Point-Pepperell, Inc. v. Marshall, supra*, 496 F.Supp. at 1187.

■ In *Marshall v. North American Car Co., supra*, 626 F.2d at 322–323, the Third Circuit analyzed §§ 657(a) and (f) of the Act. The Court agreed with the conclusion reached in *West Point-Pepperell, supra*, by interpreting § 657(f) as requiring the scope of an inspection to bear some relationship to alleged violations enumerated in an employee complaint. *Marshall v. North American Car Co., supra*, 626 F.2d at 323. It was

upon the request of the person giving such notice, his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special

inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger exists he shall notify the employees or representative of the employees in writing of such determination.

further noted upon analysis of the statute that

> ... Congress refers to § 8(f) inspections as "special inspections" in the third sentence. ... [W]e believe that this term was used to distinguish § 8(f) inspections from § 8(a) inspections. The Secretary's argument, however, would convert every § 8(f) inspection into a § 8(a) wall-to-wall inspection. Because this deprives "special inspection" of any meaning whatsoever, it conflicts with the maxim of statutory construction that every word in a statute should be given meaning.

*Marshall v. North American Car Co., supra,* 626 F.2d at 323. We agree with the reasoning expressed in *North American Car.* Although there is little legislative history relating to this issue, a literal reading of the statute clearly implies alternative inspections based upon substantially divergent criteria. It is incongruous to suggest that Congress intended § 657(f) to do nothing more than echo the general inspection warrant provision, § 657(a). Such an interpretation renders § 657(f) unequivocally redundant and wholly without purpose. Rather, this Court perceives that literal interpretation and application of the statute reveals Congress intended the scope of the inspection to be limited to allegations contained within employee complaints and there is no categorical authority for wall-to-wall inspections in every case.[3]

▮ In the instant case, the affidavit of Daniel W. Wobig, the employee who filed the complaint with OSHA, sets forth the specific areas where he performed his job duties or had some knowledge of the working conditions. Although Wobig's job duties were primarily in areas of B.N.'s yard known as the "One Spot" and "Rip Track" shops, he alleges extensive familiarity with all areas of the complex. Affidavits filed by B.N. indicate its Laurel railyard is an expansive facility covering approximately 275 acres. Several repair and maintenance duties are performed within an area known as the Car Shop Complex which consists of the One Spot Shop, Rip Track, Coal Shop and the Heavy Repair Shop. Other areas used in railroad car maintenance are the Tow Run Around Track and the Roundhouse. In addition to maintenance, other areas house the Material Department, Engineering and Record-keeping, bridge and building employees, water service and electricians, areas beyond the reach of the employee's complaint. It is obvious that the Laurel facility is comprised of highly specialized and compartmentalized repair stations over a large geographical area.

▮ Although the complaint does specify with particularity the alleged violations occurring within the various repair shops, from a review of the inspection warrant language it is apparent that *any* area within the entire yard is subject to inspection, as well as all records maintained on the premises. The Court is satisfied the inspection warrant exceeds the boundaries of alleged violations set forth in the employee complaint, and therefore must be stricken as being overbroad in its scope. We read *Michigan v. Tyler, supra,* 436 U.S. at 507, 98 S.Ct. at 1948, as requiring an OSHA inspection conducted pursuant to specific employee complaints to be no more intrusive or extensive than necessary.[4] Of special note

---

3. Of course, the "plain view" principles regarding criminal probable cause apply with equal vigor to OSHA inspections. When OSHA inspection officers conduct an authorized inspection of a premises and discover additional violations, or conditions supportive of probable cause, they may seek additional warrants based upon their observations during the initial inspection. In other words, OSHA officials are not required to close their eyes or ignore possible violations not made the subject of an initial inspection.

4. Such reasoning is merely a logical inference derived from the statute and promulgated regulations.

§ 657(d) provides:
"Any information obtained by the Secretary, the Secretary of Health, Education, and Welfare, or a State agency under this Chapter shall be obtained with a minimum burden upon employers, especially those operating small businesses. Unnecessary duplication of efforts in obtaining information shall be reduced to the maximum extent feasible."
29 C.F.R. § 1903.7(d) provides:

is the dissenting opinion by Judge Wood in *Burkart Randall Div. of Textron, Inc. v. Marshall, supra,* 625 F.2d at 1328. Judge Wood concluded:

It is not anomalous to permit general inspections where probable cause is supplied by a neutral plan but to limit inspections where probable cause is supplied by particularized employee complaints. Rather, the dichotomy is merely a recognition of the notion inherent in the fourth amendment that the scope of a warrant shall be tailored to the showing of probable cause.

Even upon careful analysis and application of the Act's remedial and protective purposes, this alone cannot provide the necessary probable cause where it otherwise is nonexistent. In accord with the Court's analysis are the recent district court cases of *Marshall v. Consolidated Rail Corp.* (Civil No. 79–1574, W.D.Pa. December 30, 1980), and *In the Matter of Establishment Inspection of ASARCO Incorporated Amarillo Copper Refinery, Amarillo, Texas,* 508 F.Supp. 350 (N.D.Tex.1981). Although reaching somewhat different results than in the instant case, these Courts concluded § 657(f) inspections must be tailored to the probable cause found within an employee complaint, thus establishing limits upon such inspections and negating the proposition that a wall-to-wall warrant is authorized in every OSHA investigation.

Thus, we reenforce the concept promoted by other jurisdictions that the Fourth Amendment requires that the scope of an inspection warrant issued under § 657(f)(1) be fashioned according to the initial source of probable cause—the employee complaint.

## CONCLUSION

Therefore, the Court holds the inspection warrant in this case is tantamount to authorization for a wall-to-wall search of B.N.'s facility. Where, as here, an inspection warrant is initiated by and primarily founded upon specific employee complaints pursuant to the Act, 29 U.S.C. § 657(f), the probable cause derived from the complaint cannot be construed as authorizing an inspection of an entire premises. The Court recognizes that some inconvenience will invariably be visited upon an employer when subjected to an OSHA inspection. There may be cases where a complaint alleges violations of such magnitude and pervasiveness that a wall-to-wall search is necessary. However, in all cases a § 657(f) inspection warrant must bear an appropriate and logical relationship to the violations asserted within an employee complaint. The warrant in the instant case exceeds those boundaries of probable cause distilled from the complaint and must be accordingly quashed. The scope of subsequent warrants issued pursuant to the complaint in this case must be limited to inspections of the primary areas complained of, the One Spot, Rip Track and Coal Shop stations located within the Car Shop Complex at B.N.'s Laurel, Montana, maintenance and repair railyard.

An appropriate order shall issue in accordance with this Memorandum Opinion.

---

"(d) The conduct of inspections shall be such as to preclude unreasonable disruption of the operations of the employer's establishment."